SZAFERMAN LAKIND
Szaferman, Lakind, Blumstein & Blader, P.C.
Attorneys at Law

101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
P: 609.275.0400
F: 609.275.4511

120 Sanhican Drive
Trenton, NJ 08618

The Atrium at 47 Maple Street
3rd Floor
Summit, NJ 07901
www.szaferman.com

Arnold C. Lakind
Barry D. Szaferman
Brian G. Paul+
Craig J. Hubert++
Michael R. Paglione*
Lionel J. Frank**
Jeffrey K. Epstein+
Stuart A. Tucker
Scott P. Borsack***
Daniel S. Sweetser*
Janine G. Bauer***
Jonathan I. Epstein
Samuel M. Gaylord*+++
Edward S. Kahn

*NJ & PA Bars
**NJ & NY Bars
***NJ, NY & PA Bars

Brian M. Schwartz**
Terryann Bradley
Robert P. Panzer
Benjamin T. Branche*
Michael D. Brottman**
Janine Danks Fox*
Thomas J. Manzo**
Brian A. Heyesey
Lindsey Moskowitz Medvin**
Jenna N. Shapiro
Craig Voorhees***+++
Janis A. Eisl*
Steven L. Fox**++
Alexandrea M. Jacinto
Angelina Sferra
Mariam S. Zein
Zachary M. Jaffe

+Certified Matrimonial Attorney
++Certified Civil Trial Attorney
+++Certified Workers Comp Attorney
++++Certified Workers Comp & Civil Trial Attorney

Of Counsel
Anthony J. Parrillo
Jeffrey M. Hall
Bryce S. Chase++++
Kim A. Otis
Kristine Dress Brown**

Counsel
Huff, Moran & Orron, LLC
1246 South River Road
Cranbury, NJ 08512
P: 609.655.3600

Retired:
Jeffrey P. Blumstein
Steven Blader
Linda R. Feinberg
Stephen L. Skillman

September 17, 2026

**VIA CM/ECF**
Honorable J. Brendan Day, U.S.M.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08680

**RE: Rhen v. Costco Wholesale Corporation, et al.**
**Docket No.: 3:24-cv-9583-RK-JBD**

Dear Judge Day:

This office represents Plaintiff, Jeremy Rhen. Plaintiff submits this letter brief in support of Plaintiff's Rule 37 Motion to Compel Discovery from Defendant, Costco Wholesale Corporation, as it relates to Costco's inclusion of electronic-scanning devices as part of member entry to Costco warehouse stores.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits discovery of any non-privileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); Columbus Life Ins. Co. v. Wilmington Tr., N.A., 344 F.R.D. 207, 215 (D.N.J. 2023). The Rule is to be construed liberally "to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case" and "[t]he parties must be allowed to examine all relevant evidence so that each will have a fair opportunity to present an effective case at trial." Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). Rule 26 also requires

proportionality. In evaluating proportionality, the Court considers "the importance of the issues at stake, the amount in controversy, the parties' relative access to the information, their resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

A party may move to compel an answer, designation, production, inspection, or required disclosure. Fed. R. Civ. P. 37. The moving party bears the initial burden of showing that the requested discovery falls within the scope of Rule 26(b)(1). See Caver, 192 F.R.D. at 159. Once that burden is met, the burden shifts to the party resisting discovery to establish the lack of relevance by demonstrating that the requested discovery does not fall within the broad scope of relevance as defined under Rule 26, or is of such marginal relevance that the potential harm caused by discovery would outweigh the ordinary presumption in favor of broad disclosure. See First Niagara Risk Mgmt., Inc. v. Folino, 317 F.R.D. 23, 25 (E.D. Pa. 2016).[1]

## LEGAL ARGUMENT

Applying the foregoing legal principles, Plaintiff seeks three (3) specific categories of discovery related to Costco's implementation of electronic membership scanning devices in its retail warehouses as set forth below.[2]

### A. Discovery related to Costco's entrance membership-verification process.

The present discovery dispute concerns targeted discovery with respect to Costco's implementation of electronic-scanning devices as the primary means of verifying membership for

---

[1] The parties in this matter entered into a protective order on August 8, 2025. That Order precludes publicly broadcasting or disseminating information produced in discovery beyond the bounds of this isolated litigation.

[2] For purposes of this brief, "electronic-scanning devices" refers to the electronic hardware, software, systems, and related tools used by Costco at warehouse entrances for the purpose of scanning, reading, verifying, and/or otherwise processing membership credentials and assisting Costco personnel in confirming membership status or eligibility to exercise Costco membership privileges. The term is descriptive only and includes any corresponding Costco internal terminology.

customers entering its warehouses. At the time of the September 1, 2022 assault, Costco employed personnel to physically check and verify the membership cards of Costco customers at warehouse entrances. This policy was later changed from a personnel-only function to add the use of electronic-scanning devices whereby customers scan their membership cards to gain entry. Plaintiff demanded discovery directed to specific operational considerations underlying Costco's transition to the electronic scanning system, including customer flow and entry efficiency, staffing and personnel allocation/needs, misuse or sharing of membership credentials, loss prevention, fraud prevention, or customer security and safety. This category of discovery was specifically sought in Plaintiff's Supplemental Notice to Produce No. 3 and in portions of Supplemental Interrogatories Nos. 8, 9, and 12 served upon Costco on April 7, 2025 and December 12, 2025.

To date, Costco has failed to produce any discovery related to the scanner issues. Costco's May 8, 2026 discovery status letter to the Court states that "Costco's position [is] that the scanner implementation had nothing to do with crime prevention," and that "the membership scanner was implemented to provide a more efficient way to check memberships at the door, including providing a better photograph of the member for the human at the door to see. . . . [and] was put in place as part of Costco making its business operations more efficient."

Plaintiff is entitled to the requested discovery, pursuant to Rule 26(b)(1), in furtherance of Plaintiff's negligent security and negligent-supervision claims. Plaintiff bears the burden of establishing that Costco failed to exercise reasonable care in controlling access to its premises, and failed to adequately train and supervise personnel responsible for same. Basically, Costco chose to create a membership club sales warehouse where members may purchase items at the warehouses only if you have proof of membership allowing entry to the warehouse. The prohibition on access is

likely to lead to conduct by Costco that refuses entry to their warehouse stores by nonmembers.[3] Moreover, non-member entry and refusal to vacate establish criminal acts of trespass as defined in several of the criminal statutes, including N.J.S.A. 2C:18-3(a)-(b). The measures taken by Costco to reduce, prevent, and prohibit such entrance by nonmembers include Costco employees utilizing scanners to identify those permitted to enter the club and those who are not. This information is relevant to the control Costco has over the persons who enter its store and the identity of those individuals.

The discovery issue before the Court is whether the requested categories of information are relevant and proportional under Rule 26(b)(1), not whether Plaintiff can establish the underlying facts that the requested discovery is intended to develop. Costco's implementation of electronic-scanning devices did not create a new warehouse function. Rather, it modified the manner in which Costco carried out the same entrance membership-verification function already in place at the time that Plaintiff was attacked on Costco's premises. That distinction is relevant because Plaintiff's negligent-security and negligent-supervision claims directly challenge the adequacy of Costco's entrance procedures, the duties and responsibilities of employees assigned to membership-verification functions, the training and supervision provided to those employees, and Costco's monitoring of persons entering the premises.

As to the proportionality factors outlined in Rule 26(b)(1), each weighs in favor of the discovery. The first factor addresses "the importance of the issues at stake." Here, this category of

[3] The subpoenaed Lawrence Police Department records confirm Costco provided investigative information that individuals entering the store are in fact monitored by Costco, tracked while shopping, and at times can be banished from future presence on Costco property. These security measures, including, controlling the entrances to the store, are relevant to Plaintiff's case. Despite Plaintiff's requests, other than the service member assistant job description advertisement, Costco has produced no internal documents regarding these incidents or any policies/procedures applicable to these types of incidents or store entry. In fact, to date, Costco has only produced five pages of discovery that were not personally served by Plaintiff upon Costco.

discovery bears directly on the nature, purpose, and adequacy of the systems utilized by Costco to effectuate membership-verification functions. Plaintiff's position is that Costco failed to employ and enforce adequate procedures governing persons entering the warehouse and failed to adequately supervise and monitor the entrance and the employees tasked with carrying out membership-verification functions. Plaintiff's discovery demands seek information that will likely identify relevant information related to Costco's subsequent decision to alter and the supposed goal of improving this process.

Turning to the second factor under Rule 26(b)(1), the "amount in controversy," this action involves claims arising from a violent assault resulting in surgery with long-term recovery and permanent injuries. The amount in controversy is therefore sufficient to justify targeted corporate discovery concerning a discrete liability issue, especially at this stage where Plaintiff has substantially narrowed the scope of the scanner discovery sought. Turning to the third factor under Rule 26(b)(1), the parties' "relative access to relevant information," is particularly significant because of the wide informational asymmetry between Costco and Plaintiff. Plaintiff has no independent means of knowing which corporate departments participated in developing and implementing the electronic-scanner devices, what kinds of reports, studies, or other analyses were generated prior to testing and/or pilot studies, which corporate custodians possess relevant information, or where Costco maintains responsive records. Costco generated materials addressing the operational considerations relevant here, which are only available to Costco. If, after a diligent corporate-level inquiry, no responsive materials exist, Costco may designate an appropriate corporate representative to give appropriate testimony. Plaintiff, however, has no independent means of obtaining such materials or knowing what materials exist.

Similarly, with respect to the fourth factor of Rule 26(b)(1) which considers the parties' resources, Costco is in the best position to identify the corporate departments, custodians, and repositories, to conduct a targeted search, and to produce responsive discovery. Plaintiff is not asking Costco to search every warehouse, employee, server, or corporate repository, but Costco is nonetheless obligated to conduct a diligent inquiry of its corporate records for the sought information. See Younes v. 7-Eleven, Inc., 312 F.R.D. 692, 699–700 (D.N.J. 2015) (ordering production of discovery concerning the formation, implementation, and results of a corporation-wide initiative, including identification of the departments/personnel who established and operated the project, while explaining that the responding corporation must search the locations where responsive documents would reasonably be expected to be found).

The fifth factor of Rule 26(b)(1) asks the importance of the discovery in resolving the issues. To date, the scanner-discovery dispute has been addressed only through counsel's representations in Costco's May 8, 2026 status letter, and more recently, at the case management conference. At the conference, the Court asked for the basis of counsel's representations and whether counsel knew the reasons for the transition from manual verification to electronic scanning. Counsel responded that he did not know. Counsel has nevertheless represented that the scanners were implemented to improve the efficiency of membership checking, provide entrance personnel with a clearer member photograph, and permit real-time identification of expired memberships or account holds. Counsel also represented that non-members are permitted to enter club warehouses for purposes of using the cafeteria-food-for-purchase service or to purchase a membership. Those assertions have not been supported by written discovery, corporate testimony, or any identified source of information.

By contrast, Plaintiff has articulated a concrete liability theory tied directly to Costco's entrance-verification function, including whether Costco's warehouse-entry protocols and the

training and supervision of the employees responsible for enforcing them, were adequate to prevent unverified persons from entering the premises. Plaintiff requires this discovery to establish liability against Costco. See Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 193 (D.N.J. 2010) (rejecting an effort to confine discovery to the plaintiff's specific position where "the scope of the claims in this case extends beyond the specifics of Plaintiff's individual claims" and implicates broader corporate practices and business units). Accordingly, Plaintiff's affirmative showing of relevance and the absence of a factual basis for Costco's representations weigh in favor of permitting the discovery.

As to the final factor of Rule 26(b)(1), whether any identified burden is outweighed by the likely benefit of the proposed discovery, Plaintiff recognizes that Costco is a global retail giant and its corporation-wide initiative to modify the entrance/membership verification process likely generated a substantial volume of material outside the considerations relevant to Plaintiff's claims. Plaintiff does not seek that broad universe of material. The proposed discovery is instead limited to the specific operational considerations bearing on the membership-verification function at issue. Costco has not produced any discovery concerning the scanner initiative, Rule 30(b)(6) depositions have not been taken, and there is no discovery in the record identifying the volume or location of potentially responsive materials, the custodians or departments likely to possess them, the searches that would be required to obtain same, or the time or expense associated with production. In fact, the most recent discovery production by Costco included seventy-six (76) pages of Bates stamped records, seventy-four (74) of which came from Plaintiff's own discovery production. Accordingly, Costco has not established that the benefit of the minimal proposed discovery would be outweighed by the production burden. See Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 197–98 (D.N.J. 2010) (rejecting an undue-burden objection where the defendant asserted that production would

require significant effort but failed to provide a detailed certification establishing the expense that production would entail).

**B. Scanner-device pilot testing and selection criteria for testing sites**

Plaintiff also seeks discovery related to the pilot testing of the scanner devices prior to Costco's nationwide rollout of the new protocol adding the scanners. More specifically, Plaintiff seeks information limited to which Costco warehouses were selected as pilot, test, beta, proof-of-concept, or early-deployment locations for testing the electronic-scanning devices, together with records identifying the general rollout chronology and the specific implementation of the program at Warehouse #1199. This category of discovery was specifically addressed in Plaintiff's Supplemental Notice to Produce No. 4 and in portions of Plaintiff's Supplemental Notice to Produce No. 3 served upon Costco on December 12, 2025.

Discovery relating to Costco's evaluation of the pilot program testing, as it occurred and thereafter, is also sought. The criteria used to select pilot locations are relevant as they likely identify operational conditions that Costco considered significant to the selection of representative test environments. Pilot locations selected based upon certain store operation conditions, relevant to membership verification, duties of entrance personnel, managing a persons whose membership could not be verified, unauthorized, improper use or access, control, loss prevention, trespass, or security concerns will likely reveal material information of Costco's entrance verification objectives both pre- and post-scanner implementation. Accordingly, pilot stage discovery is relevant as it may demonstrate operational conditions including membership behavior that Costco sought to modify by adding scanners to its store entry process.

Moreover, pilot-testing discovery is proportional for substantially the same reasons applicable to the first category of discovery. Rule 26(b)(1). The fifth factor, the importance of the discovery in

resolving the issues, weighs in Plaintiff's favor because the pilot-testing discovery serves a different purpose than the first category of discovery. Pilot-testing is directed to what Costco learned once those assumptions were tested in actual warehouse operations. Pilot-stage discovery is independently important to resolving Plaintiff's claims because it may reveal which features of the entrance-verification process Costco evaluated, what it learned from that evaluation, and which operational considerations ultimately informed the process adopted at, or selected for, Warehouse #1199.

The sixth factor, the burden or expense of the proposed discovery relative to its likely benefit, also favors production. Plaintiff does not seek every record generated during Costco's pilot-testing phase. Rather, the request is limited to the entrance-verification at issue herein and seeks only information concerning the locations discussed above. The fact that this category concerns a later testing phase does not broaden its subject matter. Said discovery is relevant because it will show whether Costco's pre-testing assumptions were confirmed, modified, or rejected during live testing and how those findings ultimately informed implementation at Warehouse #1199.

**C. Policies, Procedures, Training, and Employee Response Protocols Governing Scanner-Based Membership Verification.**

Plaintiff's final category of proposed discovery relates to the policies, procedures, training, and other instructions governing the use of the scanner devices by Costco personnel, the information presented to those employees through the scanner system, and the actions Costco trained and instructed employees to take in response to that information. Plaintiff sought same in the Initial Notice to Produce No. 52, Supplemental Notice to Produce No. 5, and Supplemental Interrogatory No. 10 served upon Costco on April 7, 2025 and December 12, 2025.

As to relevance, the proposed discovery bears directly on how Costco ultimately defined and implemented the membership-verification function for employees vis-à-vis the application of policies, procedures, guidelines, standards, compliance directives, and training. Whereas the first category of

discovery seeks the operational rationales that informed Costco's decision to modify its existing entrance/member-verification system, and the second category of discovery concerns what Costco tested and learned during the testing phase of implementation, the third category primarily targets Costco's development of corporate policies and procedures for training and instructing employees on integrating their existing job duties with a supplemental feature, scanner-based verification.

The proposed discovery is proportional for substantially the same reasons applicable to the first two categories of discovery. For that reason, Plaintiff limits the proportionality analysis to the fifth and sixth factors. Plaintiff's claims concern the adequacy of the corporate policies and procedures governing entry-verification process, as modified by scanners, and the resulting training and supervision of the employees responsible for that function. Records which reflect the employee-facing policies and training materials speak directly to Costco's instruction and training of these employees.

Further, the likely benefit of the discovery outweighs the burden to Costco. Plaintiff's discovery demand is limited to the corporate materials used in the transition from manual verification to electronic-scanner verification, including policies, procedures, standards, guidelines, training modules, compliance directives, user instructions, and implementation protocols. A nationwide operational change of this kind likely required some centralized process for creating, approving, maintaining, and disseminating the procedures and training materials. Costco alone is able to direct its inquiry to the proper corporate departments or persons responsible for those materials. This targeted approach seeks the most probative materials while avoiding the broader technical, financial, procurement, and logistical records.

The requested discovery is narrowly tailored to the same membership-verification function implicated by Plaintiff's claims which is relevant to resolving the disputed liability issues and proportional to the needs of the case.